IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANGELA HACKNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MONINA DUNCAN, | ) |
| KISHA KIRBY, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

On December 17, 2024, Plaintiff Angela Hackney's son, Corey Cochran, was brutally murdered by his cellmate while incarcerated in Phillips State Prison. Just hours earlier, Defendants Duncan and Kirby assigned Mr. Cochran to be cellmates with Cody Finley, an inmate with a long history of violence against his cellmates, and did so in violation of a policy that prohibited inmates with different security levels from being housed together. It took less than five hours for Finley to murder Cochran. This wrongful death lawsuit is brought by Mr. Cochran's mother, Angela Hackney, for Defendants' deliberate indifference to her son's safety in violation of the Eighth Amendment.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331.

Page 1 of 8

2. Venue is proper in this district under 28 U.S.C. § 1391(b) because this is the district in which Defendants reside and where the claims arose.

## PARTIES

3. Plaintiff Angela Hackney is the mother of Corey Cochran and a resident of Catoosa County, Georgia.

4. At the time relevant to the events in this complaint, Defendant Monina Duncan was a sergeant at Phillips State Prison. She is sued in her individual capacity.

5. At the time relevant to the events in this complaint, Defendant Kisha Kirby was a unit manager at Phillips State Prison. She is sued in her personal capacity.

## FACTUAL ALLEGATIONS

6. On December 17, 2024, Corey Cochran was brutally murdered by his cellmate, Cody Finley, while incarcerated in Phillips State Prison.

7. That evening at about 5:45 p.m., while conducting pill call, a nurse and Officer Dawaylond Lee discovered Cochran's body after other inmates expressed concern because of the noises they heard emanating from the cell.

8. Earlier that day, Officer Lee had moved Finley into Cochran's cell.

9. At the time of the murder, Cochran and Finley had been cellmates for less than five hours.

10. Defendant Duncan made the decision to reassign Finley to Mr. Cochran's cell.

11. Prior to moving Mr. Finley into Mr. Cochran's cell, Defendant Duncan alerted Unit Manager Kirby to Finley's cell assignment.

12. Unit Manager Kirby approved the cell assignment and sent orders down the chain of command to transport Finley to Cochran's cell.

13. At the time of the decision to reassign Finley to Cochran's cell, Defendants Duncan and Kirby knew that Georgia Department of Corrections' policy prohibited inmates with different security level from being housed together. Mr. Cochran and Finley were not classified as the same security level.

14. Mr. Finley was a "close" watch security level.

15. The Department of Corrections classifies inmates as a "close" level of security when, amongst other things, they "have assaultive criminal or institutional histor[ies]."

16. Defendants knew Mr. Finley's disciplinary history, which clearly fit this description.

17. Mr. Finley came to prison after assaulting his mother in 2019 and severely injuring her eye.

18. Once incarcerated, Mr. Finley assaulted at least seven other inmates, many of whom were his cellmates.

19. In February 2021, Mr. Finley assaulted his cellmate and broke the cellmate's jaw. Finley's cellmate required hospitalization as a result of the attack.

20. In April 2021, Mr. Finley sexually assaulted his cellmate.

21. In October 2021, while in segregation, Mr. Finley hit his cellmate with a lock, resulting in injury to the cellmate's head.

22. In January 2022, Mr. Finley used an unknown drug and then assaulted his cellmate.

23. In February 2023, Mr. Finley and his cellmate fought and Mr. Finley was removed to a different cell.

24. In September 2023, Mr. Finley assaulted another inmate, who had to be transported to the hospital as a result of his wounds. Mr. Finley was sent to lockdown.

25. In January 2024, Mr. Finley's cellmate requested protective custody after Mr. Finley stabbed him in the ear with a weapon while he was asleep.

26. Following this incident in January 2024, Mr. Finley was relocated five more times, either as a result of a disciplinary issue or to separate him from another inmate, prior to being assigned to the cell with Corey Cochran in December 2024.

27. Mr. Cochran was classified as a medium security inmate. Inmates classified as medium security "must have established their reliability, have no major

adjustment problems and have no current alcohol or drug addiction problems."

28. Mr. Cochran suffered from persistent and severe mental health issues with schizophrenia. He never completed high school and was described as having below average intellectual functioning.

29. Mr. Cochran often heard and would talk out loud to the voices he heard as a result of his schizophrenia. This behavior often caused others to get irritated with him.

30. Mr. Cochran had a history of being subjected to violence in prison. In a different GDC facility, Mr. Cochran had been attacked and beaten multiple times.

31. In his initial psychological evaluation, he was assigned to a higher level of mental health care because of his hallucinations and his "increased vulnerability were he to be in general population."

32. Defendants also knew that Mr. Cochran was vulnerable to the violence of other inmates because Mr. Cochran had been moved into the cell for his own protection in November 2024.

33. In November 2024, Mr. Cochran was assaulted by another inmate who broke his ankle by hitting him with a metal object.

34. As a result of this assault, Mr. Cochran was involuntarily transferred into the administrative segregation cell where he would later be killed by Mr. Finley.

35. The risk to Mr. Cochran of being housed with a known violent inmate like Finley was further increased because Cochran could not request help and officers working on understaffed shifts did not perform routine security rounds as required.

36. The dorm in which Mr. Cochran was housed was on lockdown, meaning he could not exit the cell during the day without an officer present.

37. It also meant that neither Mr. Cochran nor the other inmates in the adjoining cells could seek help when Mr. Finley began to assault Mr. Cochran.

38. Although officers are required to more frequently monitor lockdown dorms, Phillips was understaffed and would regularly take several hours before any officer conducted security rounds.

39. Defendants knew that housing a violent inmate like Mr. Finley with a vulnerable inmate like Mr. Cochran in a closed, lockdown cell without frequent security rounds placed Mr. Cochran at serious risk of substantial harm.

**COUNT I**

40. This count is against Defendants Duncan and Kirby in their personal capacities and incorporates paragraphs 1–39.

41. Defendants Duncan and Kirby were deliberately indifferent to the risk of harm to Mr. Cochran when they assigned Mr. Finley to his cell.

42. Defendants knew that Mr. Finley was a close observation inmate and that his disciplinary history showed that he posed a security threat to other inmates, and in particular to his cellmates.

43. Defendants knew that Mr. Cochran was classified as a medium observation inmate whose history showed that he was more likely to be a victim of assaults by other inmates.

44. Defendants also knew that Mr. Cochran was involuntarily assigned that cell following an assault by an inmate the month before.

45. Both Defendants knew that because of understaffing, rounds were conducted less frequently than required, thereby increasing the risk to Mr. Cochran.

46. Defendants Duncan and Kirby's deliberate indifference violated Mr. Cochran's rights under the Eighth and Fourteenth Amendments, inflicting upon him unnecessary pain and suffering and ultimately causing his death.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks this Court to:

a.  Assume jurisdiction over this matter;

b.  Provide for a jury trial upon all claims and issues so triable;

c.  Award Plaintiffs nominal, compensatory, and special damages against Defendants in an amount to be proven at trial;

d.  Award punitive damages against Defendants in an amount to be proven at trial;

e.  Award Plaintiff reasonable attorney's fees and costs of litigation against Defendants under 42 U.S.C. § 1988;

f.  Award such other relief to which Plaintiffs are entitled either at law or in equity, whether explicitly pleaded or not.

Submitted on March 16, 2026.

**Jeff Filipovits**
Georgia Bar No. 825553
jeff@civil-rights.law

**Wingo F. Smith**
Georgia Bar No. 147896
wingo@civil-rights.law

FILIPOVITS & SMITH, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, Georgia 30030
404-905-2225